UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| YUNIOR ALEXANDER GUTIERREZ NAVARRO,<br><br>                  Petitioner,<br>   v.<br><br>KRISTI NOEM, et al.,<br><br>                  Respondent. | Case No. 2:26-cv-00334-TLF<br><br>ORDER GRANTING PETITIONER'S HABEAS PETITION IN PART |

## I.    INTRODUCTION

Petitioner, a native, and citizen of Venezuela, is detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1, Petition. He has been detained since on or about January 2, 2026. *Id.* at 1; Dkt. 6, Declaration of Deportation Officer Kurtis Reed ("Reed Decl.") ¶ 4; Dkt. 7, Declaration of Kristin B. Johnson ("Johnson Decl."), Ex. A.

On January 28, 2026, petitioner, through counsel, filed this habeas petition, alleging respondents: (1) violated the Administrative Procedure Act ("APA"); (2) violated his Fifth Amendment right to procedural due process; and (3) violated his Fifth Amendment right to counsel. Dkt. 1. Petitioner requests this Court: (1) assume jurisdiction; (2) declare petitioner's detention without individualized determination violates the Due Process Clause of the Fifth Amendment; (3) declare petitioner's re-detention violates governing statutes and regulations; (4) order his immediate release or, in the alternative, find bond

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 1

jurisdiction under 8 U.S.C. § 1226(a); (5) the opportunity to reapply for parole; and (6) an award of attorney's fees and costs under the Equal Access to Justice Act.

Respondent's argue the petition should be denied because: (1) petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), INA § 235; (2) petitioner is not entitled to advance notice or a pre-detention hearing for parole revocations and his re-detention comports with due process; (3) petitioner failed to exhaust his administrative remedies and has not sought a bond redetermination hearing before an Immigration Judge; and (4) petitioner is not entitled to immediate release.

The parties have consented to proceed before a magistrate judge. Dkt. 2.

The Court, having considered the parties' briefs, exhibits, and the applicable law, concludes that petitioner's federal habeas corpus petition (Dkt. 1) should be GRANTED IN PART.

Petitioner shall be released from custody within 24 hours of entry of the Court's order, on the same conditions that governed his release immediately prior to his arrest January, 2 2026. Petitioner may not be re-detained absent advance notice and a hearing before a neutral decision maker, with adequate procedural protections, to determine whether detention is warranted.

## II. BACKGROUND

Petitioner applied to enter the United States through the CBP One mobile application and received an appointment to present himself at a port of entry. Dkt. 1, Ex. A. On July 27, 2023, he appeared for his prescheduled appointment and told the immigration official that he was seeking asylum. *Id.*; Dkt. 6, Reed Decl. ¶ 4. That same day, the

Department of Homeland Security ("DHS") issued petitioner a Form I-862, Notice to Appear ("NTA"), charging him as inadmissible pursuant to INA § 212(a)(7)(A)(i)(I) (8 U.S.C. § 1182(a)(7)(A)(i)(I)). Dkt, 1, Ex. B ("Notice to Appear").

Petitioner was also issued a Form I-94 admission record by DHS, providing him with an admission record number, the date of his admission, and listing "N/A" in the "Admit Until Date" field. Dkt. 1, Exh. C ("I-94"). He was paroled into the United States for two-years pending removal proceedings. Dkt. 6, Reed Decl. ¶ 5. Petitioner subsequently filed an asylum application. Dkt. 1, Ex. F ("Asylum Receipt"). On October 12, 2024, he was granted TPS status.[1][2] Dkt. 1, Ex. E ("TPS Approval Notice").

---

[1] The government inaccurately states it was granted on April 1, 2025, but doesn't explain this inaccuracy. Dkt. 6, Reed Decl. ¶ 7. Petitioner filed the TPS status application, and the date has been verified. Dkt. 1, Ex. E ("TPS Approval Notice").

[2] Temporary Protected Status, or TPS, is a form of humanitarian relief granted to eligible nationals of countries experiencing conditions that make it unsafe or impossible for their citizens to return home. *Sheikh-Elmi v. Nw. ICE Processing Ctr.*, No. 2:25-cv-00850-JNW, 2025 WL 1360299, at *3 (W.D. Wash. May 9, 2025). Under 8 U.S.C.A. § 1254a(a)(4), "an alien who establishes a prima facie case of eligibility" for TPS shall not be removed. "Pursuant to the TPS statute, 8 U.S.C. § 1254a, the DHS Secretary may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other 'extraordinary and temporary conditions,' unless the Secretary 'finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States.'" *Vargas Sivira v. Noem*, No. 1:25-CV-01987-KES-EPG-HC, 2026 WL 221778, at *6 n.1 (E.D. Cal. Jan. 28, 2026), report and recommendation adopted, No. 1:25-CV-01987-KES-EPG (HC), 2026 WL 288172 (E.D. Cal. Feb. 3, 2026) (citing *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." *Nat'l TPS All.*, 150 F.4th at 1010 (citing 8 U.S.C. § 1254a(a)(1), (b)(2)). "Other restrictions apply: applicants must be 'admissible' under the immigration laws, id. § 1254a(c)(1)(A)(iii); they must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States,' *id.* § 1254a(c)(2)(B)(i); and they risk revocation of status if the Secretary 'finds that the [noncitizen] was not in fact eligible for such status,' *id.* § 1254a(c)(3)(A)." *Nat'l TPS All.*, 150 F.4th at 1010. "An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254(d)(4).

"In March of [2025], the United States District Court for the Northern District of California entered a preliminary order postponing the effective date of the Secretary of Homeland Security's decision to remove 'temporary protected status' (TPS) from Venezuelan nationals living in the United States." *Vargas Sivira,* 2026 WL 221778, at *6 n.1 (citing *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 23–24 (2025) (mem.)). "In May, [the Supreme] Court stayed that order while the Government appealed. The United States Court of

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 3

On March 5, 2025, DHS approved the petitioner's request for work authorization renewal until March 3, 2030, based on his pending asylum application before the Immigration Court. Dkt. 1, Ex. H.

According to the government, on November 20, 2025, U.S. Citizenship and Immigration Services terminated petitioner's TPS. Dkt. 6, Reed Decl. ¶ 7. The record does not reflect any notice was provided to petitioner. Petitioner has no criminal history and there is no evidence of any failure to comply with his parole reporting requirements, including scheduled ICE check-ins. *See* Dkt. 1.

On January 2, 2026, petitioner was apprehended in a targeted operation after grocery shopping, without incident. Dkt. 1 at 3; Dkt. 6, Reed Decl. ¶ 8. He was allegedly told he was detained because his "TPS had expired." Dkt. 1, Ex. A. The government has terminated the TPS program for all Venezuelan nationals. *Vargas Sivira,* 2026 WL 221778, at *6 n.1. Petitioner attended an Immigration Court hearing, requested a continuance, and his next appearance is March 5, 2026. Dkt. 1; Dkt. 6, Reed Decl. ¶¶ 9-10.

---

Appeals for the Ninth Circuit ultimately affirmed the District Court's preliminary order." *Nat'l TPS All.*, 146 S. Ct. at 24. In September, "the District Court entered final judgment in respondents' favor, holding unlawful and setting aside the Secretary's actions effectuating her decision—namely, her vacatur of a pending extension of TPS for Venezuelan nationals, and her termination of that status itself." *Id.* On October 3, 2025, the Supreme Court granted the government's application for stay, thereby allowing the Secretary's vacatur and termination of Venezuela's TPS status to enter into effect. *Vargas Sivira,* 2026 WL 221778, at *6 n.1.

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 4

### III.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is in "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

**A. Jurisdiction**

The government, in a footnote, challenges the Court's jurisdiction over the matter, arguing 8 U.S.C. § 1252(g), (b)(9), and (e)(3) should preclude review. Dkt. 5 at 7 n.3. The Court disagrees.

Section 1252(g) applies to only the three discrete actions that the Attorney General may take—to commence proceedings, adjudicate cases, or execute removal orders. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999). It does not refer to "all claims arising from deportation proceedings." *Id.* Petitioner does not challenge a decision to commence removal proceedings or seek to enjoin removal; he challenges the constitutionality of his re-detention without due process. *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137 (W.D.N.Y. 2025) (discussing and distinguishing *Singh v. Napolitano*, 500 F. App'x 50 (2d Cir. 2012) and *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020)).

Similarly, § 1252(b)(9) does not bar review of claims that are "independent of or collateral to the removal process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016); *see also Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006) (holding § 1252(b)(9) "did not bar the district court's review of a challenge to prolonged immigration detention before a final order of removal had issued."). The Supreme Court has

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 5

cautioned against an "expansive" interpretation of § 1252(b)(9) that would lead to "absurd" results and make certain claims "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). Challenges to detention procedures do not fall within § 1252(b)(9)'s scope when petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

And, the government argues "§ 1252(e)(3) applies and limits '[j]udicial review of determinations under Section 1225(b) of this title and its implementation.' The plain language of the statute precludes judicial review for aliens determined to be detained pursuant to Section 1225(b)(2) and applies to a 'determination under section 1225(b)' and to its implementation." Dkt. 5 at 7 n.3. § 1225(b) does not apply to plaintiff here – 1226(a) does, as more fully explained below. *Aguilar v. Eng.*, No. 2:25-cv-898, 2025 WL 3280219, at *3 (N.D. Ind. Nov. 25, 2025) ("This threshold classification does not come within the scope of § 1252(e)(3)'s limitation, for this judicial question [i.e., which detention provision applies] isn't a 'determination under section 1225(b) and its implementation.' It is a determination whether an alien, so defined in the INA, even falls within that section."); *see also Castañon-Nava*, No. 25-3050, 2025 WL 3552514, at *10 n.13 (holding the federal government defendants "cannot insulate themselves from judicial review" under § 1252 "simply by pointing to § 1225(b)(2)(A) and claiming that it applies without any factual support.").

Furthermore, plaintiff is not challenging 1225(b) and its implementation but raises an as-applied challenge to the procedures of his particular case. *Singh v. Barr*, 982 F.3d

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 6

778 (9th Cir. 2020) (holding the provision "does not grant the appellate court either jurisdiction or venue to review such petitions" because it concerns regulatory challenges, not individual habeas petitions challenging detention procedures.).

Accordingly, the Court has jurisdiction.

**B. Statutory Framework**

The government asserts both that petitioner is detained under 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a). The government's brief explains the law and facts with references to statutory framework or due process that is opaque. Dkt. 5 at 4 ("Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), INA § 235(b)(2)(A)"), 11 ("Petitioner is lawfully detained pursuant to 8 U.S.C. § 1226(a)"), 15 ("Nor has Petitioner provided any legal basis for his immediate release from detention while detained pursuant to 8 U.S.C. § 1226(a)"); *see also* Dkt. 6, Reed Decl. ¶ 12. ("As Petitioner is an Arriving Alien, he is mandatory detention pursuant to INA 235(b)(2)(A)").

Section 1225 governs the detention of noncitizens seeking admission into the United States. *See Jennings*, 583 U.S. at 289. Section 1225(b)(1) covers aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation, and certain other aliens designated under the Attorney General's discretion. Separately, Section 1225(b)(2) serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1). *Jennings*, 583 U.S. at 287. A noncitizen detained under section 1225(b)(1) or (b)(2) may be released on a *case-by-case* basis only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)." Dkt. 5 at 8 (emphasis added);

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 7

*Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *2 (W.D. Wash. Dec. 30, 2025) (citations omitted). Other than this limited exception [,]...detention under § 1225(b)(2) is considered mandatory...[and] [i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Id.* (citations omitted).

§ 1226 governs the detention of certain noncitizens who are already in the country pending the outcome of removal proceedings. *Jennings*, 583 U.S. at 289. Normally, § 1226(a) is the "default rule" applicable to noncitizens already in the country. *Id.* at 288. Under this default rule, an immigration officer initially determines to either detain or release the noncitizen. After this decision is made, a detained noncitizen may request a bond hearing before an immigration judge. 8 C.F.R. § 1236.1(c)(8), (d)(1). At any such bond hearing, "the burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge...that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citation omitted).

Petitioner initially presented as an "arriving alien" when he presented himself to immigration officers at a point of entry for his government sanctioned CBP-One appointment at a port of entry in Laredo, Texas. Dkt. 1 at 2, Ex. B ("Notice to Appear") ("You are an arriving alien."). However, he was simultaneously issued an I-94, which is an interim parole document that was valid for two years. Dkt. 1, Ex. C (listing "N/A" in the "Admit Until Date" field); Dkt. 7, Johnson Decl., Ex. A ("Form I- 213") at 4. There is no evidence in the record petitioner was released under 8 U.S.C. § 1182(d)(5)(A).

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 8

Petitioner has been in the community for over two years, was granted TPS, received employment authorization, and complied with reporting requirements. At the time of his re-detention, he was not seeking admission at the border.

Accordingly, petitioner is an admitted individual whose redetection is governed by § 1226, and not an individual "seeking admission" admission under § 1225.[3] *Medina v. Mattos*, No. 2:25-CV-02020-CDS-BNW, 2026 WL 19130, at *4 (D. Nev. Jan. 4, 2026)(holding a petitioner fell under 1226(a) because he was "not actively seeking to lawfully cross into the territorial limits of the United States because" he had already entered, was released with a parole document, and was granted a TPS); *Salazar v. Casey,* No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025)(finding petitioner was under 1226(a) because "Petitioner has been granted humanitarian parole subject to a Form I-94, granting her parole for two years").

Thus, 1226(a) is applicable here, and the Constitution requires due process.

**C. Petitioner's Re-Detention and Fifth Amendment Due Process**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within

---

[3] The government cites *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026), which supports one of government's contradicting positions here that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). Dkt. 5 at 2. With respect to the Fifth Circuit Court of Appeals, this split decision is not binding on this Court and is inconsistent with this Court's view of the statutory text and relevant Ninth Circuit and Supreme Court authority interpreting it.

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 9

the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976). Due process thus guarantees notice and an individualized hearing before a neutral decisionmaker to assess danger or flight risk *before* the revocation of an individual's release. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard . . . . at a meaningful time in a meaningful manner." (citation omitted); *Morrissey v. Brewer*, 408 U.S. 471, 485 (1972) (requiring a "preliminary hearing to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed . . . a violation of parole conditions" and that such determination be made "by someone not directly involved in the case[.]") (citation omitted)); *see also Vitek v. Jones*, 445 U.S. 480 (1980) (applying *Morrissey* to civil commitments).

Determining whether a particular administrative procedure satisfies due process "generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–21. (W.D. Wash. 2025).

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 10

The Ninth Circuit in *Rodriguez Diaz v. Garland* assumed without deciding that the *Mathews* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). Due process requires a hearing before the government revokes a person's liberty, particularly where the individual has lived in the community under some supervision. *E.A. T.-B. v. Wamsley*, 795 F. Supp. at 1321-22, n. 4.

The Court will consider each *Mathews* factor to determine whether petitioner's arrest and detention comport with constitutional due process requirements, and what would be required for adequate due process protections.

1. **Private Interest**

Under the first *Mathews* factor, the Court determines the private interest to be affected by the official action. Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). A released individual had an "opportunity 'to form the [ ] enduring attachments of normal life'" and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Morrissey,* 408 U.S. at 482).

When petitioner was released from ICE custody for over two years on interim parole, he "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, at *3 (W.D. Wash. 2025). The fact the government allowed petitioner to remain in the community for almost two and a half years after issuing the parole, granted him a TPS, as well as work authorization as his asylum application is pending, only strengthens this interest. *Tran v. Bondi*, 2025 WL 3725677, at *11 (citing *Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025)).

Therefore, the first *Mathews* factor weighs in petitioner's favor.

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor examines both the risk of an erroneous deprivation of liberty under the procedures used and the probable value of additional or substitute procedural safeguards. *Mathews,* 24 U.S. at 335.

It is undisputed that there has been no finding that petitioner poses a danger to the community or is a flight risk. *See generally* Dkt. 1; Dkt. 5.

The record shows petitioner was issued an I-94 arrival record and was paroled into the United States and granted TPS. Respondents have produced no order setting forth the conditions that petitioner allegedly violated, and the government does not state anywhere in its response he has violated any conditions.[4] Further the record shows

---

[4] The Form I-213 states petitioner was arrested on January 2, 2026 because he "was in violation of the conditions of his release in that he failed to report to ERO." Dkt. 7, Johnson Decl, Ex. A. There is no evidence of this purported violation anywhere in the record nor is it mentioned in the government's petition.

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 12

upon entry petitioner had no criminal history and since entry petitioner has not committed any law violations.

In a declaration (not the response), Deportation Officer Reed states that "USCIS terminated Petitioner's TPS on November 20, 2025." Dkt. 6, Reed Decl. ¶ 7. However, the TPS had an expiration date of April 2, 2025. Dkt. 1, Ex. E. The sequence of events shows the government would not have made an individualized determination to terminate petitioner's TPS in November, because it had already expired in April.

The government asserts ICE made an individual discretionary determination to revoke petitioner's parole during his removal proceedings and while his asylum claim is being processed in the immigration courts. Dkt. 5 at 9; Dkt. 7, Johnson Decl. Ex. B ("ICE made an initial custody determination when Petitioner was re-detained on January 2, 2026, that Petitioner shall remain detained pending his asylum claim.").

The government appears to concede that petitioner has done nothing that would indicate risk of flight or risk of danger to the community. Even if the government believes it has a lawful basis for detention, that belief "does not eliminate [its] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp at 1322.; *see, e.g.*, *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sep. 14, 2020) (noting that respondents' argument that petitioner is not entitled by statute or regulation to a pre-arrest hearing does not bear on whether a hearing is required for procedural due process).

The Court holds that the arrest and detention of petitioner without a hearing on January 2, 2026 has created a significant risk of an erroneous deprivation of petitioner's liberty interest. The second *Mathews* factor weighs in petitioner's favor.

PETITION IN PART - 13

### 3. Government's Interest

The third *Mathews* factor evaluates the government's interest, including the function involved and the fiscal and administrative burdens of additional procedural requirements.

The government states "The government likewise has an interest in enforcing compliance with its orders of release on recognizance and returning individuals to custody who violate their terms" but the government provides no evidence that such an order or alleged violation happened in this case. Dkt. 5 at 11. There is no evidence of an order of release on recognizance, nor individual allegation of a violation of any of the terms of release, nor any terms of release. Petitioner was told the reason for his detention was due to the expiration of his TPS status, which had expired seven months prior to his arrest. Dkt. 1, Ex. A.

Respondents would obviously have an interest in detaining petitioner if the record showed he was a flight risk or was a risk of danger to the community, however there is no evidence of this interest. Respondents admitted petitioner, and he has lived in the United States for over two years. To the contrary, the record shows petitioner took proper steps to lawfully present himself at a port of entry via a government program, petitioner lacks any criminal history, and has been law-abiding since he entered the country. *See Osuna Benitez v. Hermosillo*, No. 2:25-CV-02535-BAT, 2025 WL 3763932, at *5 (W.D. Wash. Dec. 30, 2025).

The Court holds that the government's interest in re-detaining a noncitizen without a pre-detention hearing, is low. *See E.A. T.-B*, 2025 WL 2402130, at *5 ("the

ORDER GRANTING PETITIONER'S HABEAS
PETITION IN PART - 14

Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)).  While a pre-detention process would impose some administrative burden, that burden is minimal when weighed against the fundamental liberty interest at stake and the high risk of erroneous deprivation. Providing effectively no pre-deprivation process, as ICE did here, is constitutionally insufficient. The third *Mathews* factor weighs in favor of petitioner.

## IV.    CONCLUSION

Petitioner's re-detention occurred without meaningful notice, without a meaningful opportunity to be heard, and without any individualizing finding that the termination of his TSP would allow for him to be re-detained pending his asylum application. This violated the Due Process Clause of the Fifth Amendment. Petitioner is therefore in custody in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c). The petition for writ of habeas corpus (Dkt. 1) is **GRANTED IN PART**.

It is **ORDERED**:

1. The government shall release petitioner from custody within 24 hours of the filing of this Order, under the same conditions he was subject to immediately prior to his detention on January 2, 2026.
2. Prior to any future detention by ICE, petitioner is entitled to notice and a pre-deprivation hearing at which a neutral decision-maker must determine whether there is any valid basis for detention—i.e., whether he poses a danger to the community or a flight risk that can only be mitigated through detention. At

such a hearing, the government bears the burden of establishing by clear and convincing evidence that a valid basis exists for his detention. *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) ("the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond."); *Pablo Sequen v. Albarran,* No. 25-CV-06487-PCP, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 15, 2025).

4. No later than two days after petitioner's release (for example, if petitioner is released on a Monday, then the government shall file the declaration no later than Wednesday; or, if petitioner is released on a Friday, then the declaration shall be filed no later than the following Monday) the government must file with the Court a declaration confirming the date and time petitioner has been released from custody.

5. The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.

IT IS SO ORDERED.

Dated this 20th day of February, 2026.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge